IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DAVID MCMAHON, STEVEN LITTLEFIELD, AND THE TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INC., <br><br>*Plaintiffs*, <br><br>v. <br><br>GREGORY L. FENVES, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN, <br><br>*Defendant*. | § § § § § § § § § § § § § § § § § | Civil Action No. 1:17-CV-00822-LY |

## DEFENDANT'S MOTION TO DISMISS

Defendant Gregory L. Fenves, in his official capacity as President of The University of Texas at Austin, files this Motion to Dismiss Plaintiffs' First Amended Complaint, Application for Injunctive Relief, & Motion for Declaratory Judgment, Doc. 7 ("Compl."),[1] and in support thereof, respectfully shows the following:

### I. INTRODUCTION AND EXECUTIVE SUMMARY

The allegations underlying this case are straightforward, as are the legal principles that govern it, and which warrant its dismissal. Plaintiffs David McMahon, Steven Littlefield, and Sons of Confederate Veterans, Inc., object to President Fenves's relocation of four statues from the Main Mall of the campus of The University of Texas at Austin. Compl. ¶ 10. Plaintiffs further object to the obscuration of the plinths that supported the removed statues. *Id.* They assert that the statues,

---

[1] Plaintiffs' embedded request for a preliminary injunction is moot in light of the parties' agreement to maintain the *status quo* until the Court has ruled on this motion. *See* Docs. 6, 10, 11.

which depict Confederate statesman, were impermissibly removed from the Main Mall in violation of the First Amendment. *Id.* ¶¶ 14–29. They also bring state law claims for violations of the Texas Monument Protection Act, the Board of Regents' Authority over the University campus, and the Littlefield Bequest that delivered the statues to the campus in 1920. *Id.* ¶¶ 30–62.

Plaintiffs fail to explain, however, how they have a particularized and concrete injury that confers standing to allow them to sue. A Texas court of appeals recently dismissed a nearly identical suit for lack of standing, and this Court should follow that decision. *See Bray v. Fenves*, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied). For these reasons, and those discussed in more depth below, Plaintiffs' claims should be dismissed under Rule 12 of the Federal Rules of Civil Procedure.

## II.  Legal Standard

### A.  Federal Rule of Civil Procedure 12(b)(1)

A case is properly dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) when a court does not possess statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The burden of proof for a Rule 12(b)(1) motion lies with the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In considering such a motion, a court may rely on the complaint and any undisputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). The court may also consider its own resolution of any disputed facts. *Ramming*, 281 F.3d at 161.

### B.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Gonzalez v.*

*Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). In considering whether this standard is met, however, a court is not bound to accept as true a legal conclusion couched as a factual allegation. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1949). Rather, a plaintiff's obligation to demonstrate his entitlement to relief requires more than just labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the plaintiff's complaint must plead sufficient factual allegations to raise a right to relief that is more than speculative. *Id.* at 555.

### III. Argument and Authorities

**A. Plaintiffs' First Amendment Claim Should Be Dismissed.**

   **i. Plaintiffs lack standing to assert their claim.**

Plaintiffs allege that the removal and obscuration of the plynths constitute impermissible viewpoint discrimination. Compl. ¶ 14. Plaintiffs alleged injury, however, is no more than a generalized grievance insufficient to confer standing. Standing requires plaintiffs to demonstrate they have suffered an "injury in fact," that is "fairly traceable" to the defendant's conduct, and that will "likely . . . be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In applying these constitutional standing requirements, the Fifth Circuit adopted a "prudential principle that bars the adjudication of 'generalized grievances' against allegedly illegal government conduct." *Walker v. City of Mesquite, Tex.*, 169 F.3d 973, 979 (5th Cir. 1999). A "generalized grievance" is a harm "shared in substantially equal measure by all or a large class of citizens." *Id.* at n 16. *(quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975))

The removal of the statutes and covering of the plinths on the Main Mall is not a sufficiently particularized injury apart from the public at large. Furthermore, the individual Plaintiffs' identities as "descendant[s] of Confederate veterans," Compl. ¶¶ 1–2, does not make the removal of the

statues any more personal or injurious to them than to any other citizen of the state.[2] *See Bray*, 2016 WL 3083539, at *9 ("[E]ven if the Appellants had pled and proved that Bray and David Littlefield were descendants of Confederate veterans and had made public affirmations of the values of the military service of their ancestors in the Civil War, in the restoration and reconciliation of the Nation, and World War I, thereby affirming the same American ideals expressed and commemorated in the statues, these facts would not be sufficient to state a particularized injury distinct from that of the general public."). Plaintiffs' ostensible interest in the location of statues or monuments on the University of Texas campus is simply too attenuated to confer standing. *See Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765, 771 (5th Cir. 1978) ("As an aspect of justiciability, standing is, and can only be, demonstrated by a plaintiff who has a personal interest in the outcome of the controversy, not merely an interest as a citizen, however earnest, in obtaining a decision on a question of concern.").

Plaintiffs also fail to articulate the "concreteness" of an alleged injury required for Article III standing. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1540 (2016). Here, the only injury that the plaintiffs can claim to have suffered is some perceived stigma or psychosocial distress at not being able to view the statues or plinths in their original location on the Main Mall. Although some intangible harms can be "concrete" for purposes of standing, Plaintiffs' abstract "stigmatic injury" here is insufficient as Plaintiffs have made no allegation they were personally subjected to discriminatory treatment. *See Allen v. Wright*, 468 U.S. 737 (1984)[3] (stigmatic injury "accords a basis for standing only to 'those persons who are personally denied

---

[2] The organizational plaintiff, Texas Division, Sons of Confederate Veterans, Inc., asserts no facts pertaining to its standing to sue other than that it is "a non-profit corporation that is organized under the laws of the State of Texas." Compl. ¶ 3.

[3] *Abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014).

equal treatment' by the challenged discriminatory conduct[.]"). As the *Allen* Court explained, "[i]f the abstract stigmatic injury were cognizable, standing would extend nationwide to all members of the particular racial groups against which the Government was alleged to be discriminating," which would "transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Id.* at 755–56 (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

Because Plaintiffs fail to adequately plead an injury in fact, their First Amendment claims should be dismissed for lack of standing and subject matter jurisdiction pursuant to Rule 12(b)(1).

### ii. Plaintiffs cannot prevail on their First Amendment claim.

On the merits, Plaintiffs' First Amendment claim also fails at the Rule 12 stage under the government speech doctrine, which Plaintiffs correctly predict that Defendant will invoke. *See* Compl. ¶ 15. In *Pleasant Grove City, Utah v. Summum*, referenced *supra*, the Court considered a claim brought by a private group that insisted that a municipality was required to display its monument at a public park. 555 U.S. at 464. The Court concluded that "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Id.* In so holding, the Court first explained that the Free Speech Clause "does not regulate government speech" and that a "government entity has the right to 'speak for itself.'" *Id.* at 467 (citation omitted). Thus, the case turned on whether the display of permanent monuments in a park operated by the municipality represented government speech. The Court answered that question in the affirmative. *Id.* at 470 (explaining that "[g]overments have long used monuments to speak to the public."). The Court noted that governmental entities exercise selectivity in their choices of which privately funded or donated monuments to display—lending further credence to the commonsense conclusion that

these decisions "have the effect of conveying a government message, and . . . thus constitute government speech." *Id*. at 472.

Even more recently, in *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015), the Court reiterated the holding in *Summum* and held that the State of Texas's specialty license plates "are meant to convey and have the effect of conveying a government message," and therefore "constitute government speech." *Id*. at 2251 (quoting *Summum*, 555 U.S. at 472). Texas could therefore permissibly restrict the messages that appeared on those specialty license plates and bar a specialty plate featuring a Confederate battle flag. *Id*. at 2253.

The face of the Plaintiffs' pleading makes it clear that the decision to remove the statues from the Main Mall was government speech rendered by the University itself. *See, e.g.*, Compl. ¶ 10. This is sensible because President Fenves, acting on behalf of the University, is undoubtedly entitled to communicate views reflecting the position of the University. *See Walker*, 135 S.Ct. at 2246 ("[W]hen the government speaks it is entitled to promote a program, to espouse a policy, or to take a position."). This reasoning—one that requires the dismissal of Plaintiffs' claim—is far from unprecedented:

> Circuit courts have routinely rejected First Amendment claims brought against government officials who have chosen to remove art works, offensive to some but not others, from the walls of working government institutions on the grounds they were inappropriate to that location. Further, the law clearly gives governments leeway to take into consideration the problem of the captive audience and complaints it has received from those who viewed the art work while visiting government offices for other reasons.

*Newton v. LePage*, 700 F.3d 595, 603 (1st Cir. 2012) (collecting cases). In sum, Plaintiffs cannot assert a viable First Amendment claim based on speech rendered by the government.[4]

---

[4] Plaintiffs argument that the University has "provid[ed] subsidies to support diversity of viewpoint," and that therefore, "the government must maintain viewpoint neutrality in the provision of such subsidies" is unavailing. Compl. ¶ 18. This case does not involve subsidies. The cases relied upon by Plaintiffs involve cash subsidies or their equivalent, *e.g.,* funds to private parties for family planning services in *Rust v.*

**B. Plaintiffs' State Law Claims Should Be Dismissed for Lack of Jurisdiction.**

Finally, Plaintiffs assert three claims under state law: (1) breach of the University's agreement with the Littlefield estate; (2) violation of the "Texas Monument Protection Act" – Plaintiff's label for Texas Government Code Ann. §§ 2166.501 and .5011; and (3) violation of the Board of Regents' authority of the University campus. Compl. ¶¶ 30, 49, 58. These claims should be dismissed for lack of standing. In fact, the Sixth Court of Appeals recently affirmed the dismissal of substantially similar claims on state law grounds.

In August of 2015, the Texas Division of the Sons of Confederate Veterans, Inc. (SVC), Gary David Bray and David Steven Littlefield brought suit in Texas state court to enjoin President Fenves from relocating the Jefferson Davis and Woodrow Wilson statues on the Main Mall at UT Austin. *See Bray*, 2016 WL 3083539, *2. The Texarkana Court of Appeals held unanimously that Plaintiffs did not have standing to enforce the bequest from Major Littlefield, assert claims under the Texas Government Code, or to enforce the Board of Regents' Rules. *Id.* at *8–11.

Regarding the Littlefield bequest, the *Bray* Court analyzed the law at the time the will and codicil were executed, as well as when the statues were erected, and found that when Major Littlefield executed his will, a university could not "accept gifts with conditions that would prevent it . . . from making such changes to the improvements, including their removal, as it may determine to be 'wise and expedient.'" *Id.* at *11 (quoting *Splawn v. Woodard*, 287 S.W. 677, 681 (Tex. Civ. App.—Austin 1926, no writ)). The Court therefore determined that even if Littlefield had intended the statue(s) to remain on the main mall permanently, it would not be binding on the University.

---

*Sullivan,* 500 U.S. 173 (1991), and cash grants to artists in *Nat'l Endowment for Arts v. Finley*, 524 U.S. 569 (1998). There has been no showing in this case that the University expended government funds to promote or prevent any particular individual or group's personal viewpoints. And as explained above, Plaintiffs are unable to show they were personally subjected to viewpoint discrimination. *See discussion supra* at Section III(A)(i).

*Id*. In the absence of any enforceable conditions in the will, Plaintiffs could not prove they suffered a concrete injury that was redressable by the requested relief. *Id*. (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012)). Indeed, Major Littlefield's will expressly authorized the named trustees—including the UT President—to "change [the arrangement] or the design suggested [for the statues] if they wish . . ." Littlefield Will, Plaintiffs' Exh. A, Doc. 7-1 at p. 5. Although Plaintiff Steven Littlefield (a Montana resident) purports to be a "descendant of Confederate veterans, including Maj. George Washington Littlefield," none of the plaintiffs have demonstrated a particularized interest in this suit or a real controversy between the parties that will be resolved by the Court. Likewise, the *Bray* Court properly reasoned that Plaintiffs' lack of a particularized injury distinct from that of the general public precluded standing to enforce the Board of Regent's rules. *See Bray* at *11.

Plaintiffs further assert jurisdiction under Chapter 2166 of the Texas Government Code. Doc. 7 ¶¶ 49-57 (citing Tex. Gov't Code Ann. §§ 2166.501, .5011). But Chapter 2166's directives on statue placement do not purport to create individual rights, and nothing in the plain language of 2166.5011 provides a private right of action for an allegedly aggrieved person to seek damages or otherwise enforce the section's requirements.[5] Generally, in the absence of an express provision for a private right of action, a "breach of a statutory duty normally gives rise to a private right of action on behalf of the injured person (or group of persons) *for whose benefit the statute was erected.*" *Lively v. Carpet Serv's, Inc*. 904 S.W.2d 868, 871 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (emphasis added). Thus, standing, if any, could arguably be conferred only upon the Texas Legislature, the Texas Historical Commission, or the State Preservation Board. *See* TEX. GOV'T CODE ANN. § 2166.5011. Nevertheless, Plaintiffs have not and cannot demonstrate the

---

[5] Likewise, nothing in the "State Purchasing and General Services" subtitle containing those directives authorizes citizen suits. *See* Tex. Gov't Code tit. 10, subtit. D.

requisite injury-in-fact to enforce §§2166.501 or .5011. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'") (quoting *Raines v. Byrd*, 521 U.S. 811, 20 n.3 (1997)).

## IV. Conclusion

For the foregoing reasons, Plaintiffs' claims should be dismissed for lack of standing, or alternatively, for failure to state claims upon which relief can be granted.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ *Carl.*
H. CARL MYERS
Texas Bar No. 24046502
SUSAN M. WATSON
Texas Bar No. 24061066
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1534 | FAX: (512) 320-0667
carl.myers@oag.texas.gov
susan.watson@oag.texas.gov
michael.abrams@oag.texas.gov

***Attorneys for Defendant***

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on November 20, 2017, to:

Kirk David Lyons
Attorney at Law
P.O. Box 1235
Black Mountain, North Carolina 28711

*Attorney for Plaintiffs*

                                    /s/ *Carl.*
                                    H. CARL MYERS
                                    Assistant Attorney General