## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS,
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| David McMahon; Steven Littlefield; and the Texas Division, Sons of Confederate Veterans, Inc., *Plaintiffs,*<br><br>v.<br><br>Gregory Fenves, In His Official Capacity as President of the University of Texas at Austin, *Defendant.* | § § § § § § § § § § § § | C A No.: 1:17-cv-00822-LY |

## PLAINTIFFS' RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

**COME NOW** Plaintiffs, by and through their counsel of record, with this their Response to Defendant's Motion to Dismiss, and in furtherance thereof would show unto this Honorable Court the following:

### A. PARTIES

1.     Individual plaintiffs, David McMahon and Steven Littlefield are citizens of the State of Texas and of the Commonwealth of Virginia respectively and are direct descendants of Confederate Veterans. Littlefield is

also a collateral descendant of Maj George Washington Littlefield, the greatest early benefactor of the University of Texas.

2.      Associational plaintiff, Texas Division, Sons of Confederate Veterans, Inc. is a non-profit corporation that is organized under the laws of the State of Texas.

## B. FACTS

3.      Individual plaintiff, David McMahon, is a citizen of the State of Texas and a descendant of Confederate veterans.

4.      Associational plaintiff, Texas Division, Sons of Confederate Veterans, Inc., is a non-profit corporation that is organized under the laws of the State of Texas.

5.      Plaintiffs incorporate facts and law pled in their First Amended Complaint, Application for Injunctive Relief, and Motion for Declaratory Judgment by reference. (ECF No. 7 at 3-25).

## C. ARGUMENT

### I. PLAINTIFFS HAVE STANDING, BECAUSE PLAINTIFFS MEET THE REQUIREMENTS FOR STANDING UNDER *LUJAN*.

6.      The U.S. Supreme Court has established a three-part test for standing. *Lujan v. Defenders of Wildlife*, 505 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an "an injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *see* [*Allen v.* Wright, 468 U.S. 737, 756 (1984)]; *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-41, n. 16 (1972); and (b) "actual or imminent," not "conjectural or hypothetical," *Whitmore* [*v. Arkansas*, 495 U.S. 149, 155 (1990)] (quoting *Los Angeles v.*

*Lyons*, 461 U.S. 95, 102 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury as to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 38, 42.

*Lujan*, 505 U.S. at 560-61; *see also Three Expo Events, L.L.C. v. City of Dallas*, No. 3:16-CV-0513-D, 2017 WL 1955527, at *2 (N. D. Tex. May 11, 2017).

7.      A concrete injury-in-fact need not be merely tangible. *Spokeo, Inc. v. Robins*, 578 U.S. \_\_\_\_\_ (2016) at II(B)(2) (citing *Pleasant Grove City, Utah, v. Summum*, 555 U.S. 460 (2009) (denial of free speech); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (denial of free expression of religion)). "The loss of First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs incorporate their First Amended Complaint, Application for Injunctive Relief, and Motion for Declaratory Judgment by reference to show that defendant's actions, past and future, have and will abridge plaintiffs' right to freedom of speech. (ECF No. 7 at 3-12). Plaintiffs' constitutional injury is the injury-in-fact. *Id.*

8.      Plaintiffs have suffered an injury-in-fact that is concrete, because the University has removed the Littlefield Statues that

communicate political viewpoint. *Lujan*, 505 U.S. at 560-61. Plaintiffs are in the position to suffer an imminent concrete injury, because the University is planning to remove the plinths to the Littlefield Statues from the University's South Mall. These works of public art express a political viewpoint: that the men who fought for the Confederacy in the Civil War deserve our respect.[1] This political viewpoint extends to Congress, who recognized Confederate soldiers, sailors, and marines as American veterans, eligible to receive federal pensions and whose widows were eligible to receive and still are receiving federal veterans' survivor pensions. Public Law 85-425. https://www.gpo.gov/fdsys/pkg/STATUTE-72/pdf/STATUTE-72-Pg133.pdf.

9.     This Congressional respect for Confederate-American veterans is the same political viewpoint that the members of the Sons of Confederate Veterans share individually and corporately. The Texas Division, Sons of the Confederate Veterans, posts the following message on its webpage, given in 1906 by Lt. Gen. Stephen D. Lee, CSA:

> To you, Sons of Confederate Veterans, we will submit the vindication of the cause for which we fought. To your strength will be given the defense of the Confederate soldier's good name, the guardianship of his history, the emulation of his virtues, and the perpetuation of those principles he loved. Remember, it is

---

[1] Congress recognized Confederate soldiers, sailors, and marines as American veterans, eligible to receive federal pensions and whose widows were eligible to receive federal veterans' survivor pensions. Public Law 85-425.

your duty to see that the true history of the South is presented to future generations.

*About Us*, SCVTEXAS.ORG (October 4, 2017), http://www.scvtexas.org/What_Is_The_SCV.html.

10.    The purpose of the Texas Division, Sons of Confederate Veterans, Inc., is described on the association's website:

> We, the Sons of Confederate Veterans, having been commissioned by the Confederate Veterans themselves, retain our responsibility and right to adhere to the founding principles of the United States of America[,] remembering the bravery, defending the honor and protecting the memory of our beloved Confederate Veterans, which includes their memorials, images, symbols, monuments and gravesites for ourselves and future generations.

*Home Page*, SCVTEXAS.ORG (October 4, 2017), http://www.scvtexas.org/Home_Page.php.

11.    The SCV's purpose is to protect Confederate-American memorials, images, symbols, monuments, and gravesites for the communication of the political viewpoint that Confederate-American heroes sacrificed for a noble cause that the victors in the war have almost uniformly whitewashed from history.    Individual plaintiff, the SCV, and all SCV members have made public affirmations of the values of the military service of their ancestors in the Civil War and in the restoration and reconciliation of the nation subsequently.    When the University removed the Littlefield Statues and is now threatening the Statues' plinths, the Confederate Memorial Fountain, and the George Washington Statue, the University's actions established past and imminent concrete injury-in-fact to plaintiffs by

the infringement of their political viewpoint communicated by the Monuments. *Lujan*, 505 U.S. at 560-61.

12.     Plaintiffs have suffered an injury-in-fact that is particularized, because plaintiffs' injury is distinct from any effect on the general public. *Id.* In order for an injury to be particularized, it must effect "a small, easily identifiable group, as distinguished from the public generally." *Gray v. Saint Matthew's Cathedral Endowment Fund*, 544 S.W.2d 488, 491 (Tex. App.— Texarkana 1976, no pet.); *see Baylor L. Rev.*, Notes, 163 (1973). An example of the application of this rule involves an action over which parties have standing to enforce a charitable trust over a church.

> If a trust exists for the benefit of a definite local church, . . . the members and pewholders of that church have a rather certain definite interest in the enforcement of the trust.   While the benefits will go to all the community . . . and also to the general public, it is practically sure that the members of the church will all of them obtain some advantage.   It is therefore not surprising to find that a number of courts have allowed a church member or pewholder in such a case to sue to enforce the charity.

*Gray*, 544 S.W.2d at 491 (quoting Bogert, *The Law of Trusts and Trustees*, § 414, 344 (1964)).

Likewise, potential beneficiaries of a charitable trust would have standing to enforce trust terms, "if the class is sharply defined and its members limited in number." *Hooker v. Edes Home*, 579 A.2d 608, 614 (D.C. 1990) (citing *Alco Gravure, Inc. v. Knapp Found.*, 479 N.E.2d 752, 755 (N.Y. 1985); *St. John's-St. Luke Evangelical Church v. National Bank*, 283 N.W.2d 852, 858-60 (Mich. App. 1979) (where class of beneficiaries not "uncertain and indefinite,"

standing should not be denied); *Gray*, 544 S.W.2d at 491 (problems of indentification and undue harassment are not present when class of persons to be benefited is small, identifiable group, distinguished from public generally)).

13.    Members of the SCV are discrete and small in number.  The Sons of Confederate Veterans is a small, easily identifiable group.  *Gray*, 544 S.W.2d at 491.  SCV membership averages 3,000 annually in a state population of around 27,500,000.  The membership is easily identifiable.  The membership rolls can be readily accessed and all individual members identified.  Membership is restricted to men who can prove descent from Confederate-American veterans through independent genealogical research. Every member must show blood kinship with Confederate-American veterans, so that membership also carries an intimate, familial requirement in addition to the veteran's service requirement.  Remarkably few men can meet these two requirements.

14.    Plaintiff association and individual member suffered a particularized injury, even though the public was also affected by the Statues' removal.  The SCV and SCV members were uniquely injured, because plaintiffs have a dissenting political viewpoint that was communicated by the Littlefield Statues.  The removal of Confederate-American Monuments uniquely and particularly affects plaintiffs, because of plaintiffs' unique ties through familial veterans' service to the dissenting political viewpoint

expressed in the Statues and which the University has impermissibly impaired.

15.    Plaintiffs' injury is actual and imminent, but not conjectural or hypothetical. *Lujan*, 505 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 41-42). Plaintiffs' injury-in-fact is the University's removal of the Littlefield Statues. Jonah Engel Bromwich, *University of Texas at Austin Removes Confederate Statues in Overnight Operation*, NYTIMES.COM (Aug. 21, 2017), https://www.nytimes.com/2017/08/21/us/texas-austin-confederate-statues.html.    The University's removal of the Statues impermissibly abridged plaintiffs' right to free speech. *Elrod*, 427 U.S. at 373. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* Plaintiffs have a century-long purpose in the preservation of the Southern viewpoint relative to the Civil War and subsequent historic events that is expressed through the public art of the Confederate-American Monuments.  The University removed the Littlefield Statues expressly because the University decided to suppress the political viewpoint expressed by the Statues. *President Fenves' Decision on UT Austin                    Statuary*,                    PRESIDENT.UTEXAS.EDU, https://president.utexas.edu/messages/statuary  (last visited September 19, 2017).

16.    The University's suppression of the political viewpoint communicated in the Littlefield Statues injured plaintiffs, because the

suppressed political viewpoint is the same viewpoint that plaintiffs have long protected and promoted.   http://scvtexas.org/ *Home Page; About Us*.   To be clear, the University has also imputed repugnant political viewpoints onto the Littlefield Statues' communication.   *President Fenves*.   The University's imputed political viewpoints are baseless in fact and are decidedly separate from the political viewpoints that the Littlefield Statues and the Confederate Memorial Fountain were erected to communicate.   Andrew Weber, *The Long, Controversial History of UT's Confederate Statues*, KUT.ORG  (Aug. 12, 2015) www.kut.org.   The University's imputation of erroneous political viewpoints onto and subsequent removal of the Littlefield Statues are the two injuries-in-fact suffered by plaintiffs.   The imputation of erroneous political viewpoint and the removal of the Statues for the imputed viewpoint suppressed the diversity of political viewpoint in public art, subsidized[2] by the University for diversity of political viewpoint and protected by plaintiffs for over a century. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 613-14 (1998) (quoting *Regan v. Taxation with Representation for Wash.*, 461 U.S. 540, 548 (1983)).

17.   Plaintiffs' imminent injuries-in-fact are of like kind to plaintiffs' on-going injuries-in-fact.   The University has made plans to remove other

---

[2] Defendant President erroneously alleges that the University has not subsidized the Littlefield Statues and Confederate Memorial Fountain.  (ECF No. 12 at 6, n. 4).  This ludicrous comment is facially untrue.  The University subsidizes the Littlefield Monuments, because the University "grant[s] a regular allowance or monetary assistance to" the Monuments.  *Black's Law Dictionary* 1656, 2d definition (10th ed. 2014).   The water flows through the fountain, the trash cans close to the Monuments are dumped out, the trash that falls on the grounds around the Monuments is removed, University police patrol the area. These are all subsidies.

Confederate-American Monuments, notably the plinths to the Statues. The University's imminent plans will injure plaintiffs' free speech guarantees just as surely as the University's removal of the Statues already has, because the University's imminent plans will have the identical effect that the University's removal of the Statues had: impairment of viewpoint and denial of free speech.

18.   There is a causal connection between the suppression of political viewpoint in the Confederate-American Statues that plaintiffs have long protected and the University's removal of the Statues and the threatened removal of other Confederate-American Monuments. The suppression of free speech communicated by the Monuments has been and is being threatened by the University, who removed the Statues and has made plans to remove the other Monuments. No other entity but the University has removed the Statues. Since the University is the actual and sole cause for the removal of the Statues and is the actual and sole cause of the threatened removal of the other Confederate-American Monuments, plaintiffs' injuries causally result from the University's conduct. *Lujan*, 505 U.S. at 560-61.

19.   It is likely, as opposed to merely speculative, that plaintiffs' injury will be redressed by a favorable decision. Plaintiffs are requesting the Court enjoin defendants from further removing the Confederate-American Monuments and to replace the Statues. The reinstallation of the Confederate-American Statues, a grant of preliminary injunction, a grant of

permanent injunction, and a favorable order on the motion for declaratory judgment will secure the dissenting political viewpoint communicated by the Confederate-American Monuments from the University's removal of public art that is subsidized by the University to express diversity of viewpoint. The Court's ruling to enjoin the University from removing and to replace subsidized public art and to maintain neutrality of viewpoint will restore plaintiffs' right to free speech. *Id.*

20.     Defendants erroneously assert that the Texas Sixth Court of Appeals in Texarkana "dismissed a nearly identical suit for lack of standing." (ECF. No. 12 at 2 & 7). The Court of Appeals reached a significantly different conclusion. The *Bray* court did not find that the plaintiffs lacked standing, rather the *Bray* court found in this unreported case: "that [the plaintiffs] failed to either plead or prove a particularized injury that is different from the general public." *Bray v. Fenves*, 2016 WL 3083539 *15 (Tex. App.— Texarkana Mar. 24, 2016, pet. denied). The *Bray* court ruled that the plaintiffs had a pleading defect that resulted in the plaintiffs not meeting their burden to prove standing. This conclusion implied that had the plaintiffs sufficiently pled their case, they could have had standing. Here, plaintiffs make substantively different pleadings, both legally and factually, from those in *Bray*, and this Court should, therefore, rule on the sufficiency of pleadings in this case alone.

21.     Defendant President makes further erroneous citation by

referencing a First Circuit opinion. Defendants make a conclusory statement that *Newton v. LePage*, 700 F.3d 595, 603 (1st Cir. 2012), a non-binding case, is somehow relevant to the instant matter. However, *Newton* is factually and legally distinguished.

22.   *Newton* is factually distinguished from the instant matter. The *Newton* controversy concerned a mural that the State of Maine commissioned through a government-refereed contest for a labor-department building in 2008. *Id.* at 598. In contrast, the Littlefield Statues were donated as a portion of a much larger bequest to the University, and Maj. Littlefield directed the design and placement of the Statues through his will. The Maine mural was created to express artistically the history of labor in Maine, *Id.* at 597; the Littlefield Statues were created for the express purpose of promoting a dissenting historic and political viewpoint that the University expressly agreed to promote. The State of Maine executed a contract with the artist, reserving the State's right to remove the mural under consultation with the artist. *Newton v. LePage*, 849 F.Supp.2d 82, 92 (D. Maine 2012); *Newton*, 700 F.3d at 597. The Littlefield Statues and Fountain were expressly sited and constructed to remain in perpetuity without any express right of the University to later remove them. Maine Governor LePage had the mural removed, because either (1) the governor believed the mural conveyed propaganda and failed to express the state's commitment to neutrality, *Newton*, 700 F.3d at 599, or (2) the governor objected to the

mural's funding coming from the unemployment insurance fund dedicated to unemployed workers and not from the state's arts fund. *Newton*, 849 F.Supp.2d at 110. President Fenves had the Statues removed, because he erroneously attributed repugnant political viewpoints to the Statues that they were never intended to express, i.e., creating a strawman argument, and then having the Statues removed for the erroneous political viewpoint. The Maine mural was a later interior addition to an already existing structure and existed for only a few years; the Littlefield Statues had stood for nearly a century and were the centerpiece of the University's master plan.

23.    *Newton* is legally distinguished from the instant matter. The plaintiffs in both the Maine District Court and the First Circuit Court of Appeals made no arguments in any fashion similar to Mr. McMahon and the Texas Division, Sons of Confederate Veterans, Inc., in the instant matter. The instant plaintiffs assert constitutional injury-in-fact under their asserted exception to the government-speech doctrine, as most recently described in *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009); et al. Plaintiffs rely primarily on *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), and related cases. None of the cases that plaintiffs cite in this matter, nor any of plaintiffs' arguments are found in the non-binding *Newton* cases. Since *Newton* is factually distinguished and legally lacking to any relation to our controversy, the Court should not consider *Newton* in its decision. Defendants' presentation of the *Newtons* to this honorable Court amounts to

giving Santa a cup of milk and a pound of tofu instead of cookies on Christmas Eve.  The Court should decline the offer, as should Santa.

24. All plaintiffs have standing to sue under the *Lujan* standard, because the elements for standing have been sufficiently proven.


## II.  SUBSTANTIVE RULINGS FROM THE TEXAS SIXTH COURT OF APPEALS IN *BRAY* ARE UNCONSTITUTIONAL ADVISORY OPINIONS, AND THE COURT SHOULD IGNORE THEM.

25.   The Texas Sixth Court of Appeals ruled that the plaintiffs in *Bray v. Fenves* pled defectively so that they could not establish standing. *15. Standing is a prudential requirement to establish the existence of a case and controversy for judicial consideration.  Article III of the U.S. Constitution restricts the jurisdiction of the courts to cases and controversies.  Sec. 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992); *Flast v. Cohen*, 392 U.S. 83, 92 (1968).  When the case-and-controversy requirement for subject-matter jurisdiction has not been met, a court may not consider the substantive issues presented for consideration.  *United States v. Fruehauf*, 365 U.S. 146, 157 (1961).

> Such opinions, such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for a decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests, we have consistently refused to give.  *See Parker v. Los Angeles County,* 338 U. S. 327 (1949); *Rescue Army v.*

> *Municipal Court,* 331 U. S. 549 (1947); *United Public Workers v.*
> *Mitchell,* 330 U. S. 75 (1947); *Alabama State Federation of*
> *Labor v. McAdory,* 325 U. S. 450 (1945); *Arizona v.*
> *California,* 283 U. S. 423 (1931).

*Fruehauf,* 365 U.S. at 157. The doctrine that advisory opinions are unconstitutional exercises of judicial authority that convey no legal effect is a doctrine that dates from the origins of the Republic:

> The extreme importance of the case and our desire of being explicit beyond the danger of being misunderstood, will, we hope, justify us in stating our observations in a systematic manner. We therefore, Sir, submit to you the following:
>
> 1. That the Legislative, Executive, and Judicial departments are each formed in a separate and independent manner, and that the ultimate basis of each is the Constitution only, within the limits of which each department can alone justify any act of authority.
>
> 2. That the legislature, among other important powers, unquestionably possess that of establishing courts in such a manner as to its wisdom shall appear best, limited by the terms of the Constitution only, and to whatever extent that power may be exercised, or however severe the duty it may think proper to require, the judges, when appointed in virtue of any such establishment, owe implicit and unreserved obedience to it.
>
> 3. That at the same time, such courts cannot be warranted, as we conceive, by virtue of that part of the Constitution delegating Judicial power, for the exercise of which any act of the legislature is provided, in exercising (even under the authority of another act) any power not in its nature judicial, or, if judicial, not provided for upon the terms the Constitution requires.

*Hayburn's Case*, 2 U.S. 409, 413-14 (1792).

26.   Since the *Bray* court determined that the plaintiffs in that action did not sufficiently plead standing and that standing did not, therefore, lie, the *Bray* court had no subject-matter jurisdiction to consider or

decide any alleged controversy presented. The *Bray* court's extra-constitutional conclusions on the University's breach of the Littlefield bequest, the University's breach of the Texas Monument Protection Act, and the University's breach of the Board of Regents' authority over the campus were mere advisory opinions that have no force of law. The Court should ignore the *Bray* court's extra-constitutional exercise of authority, consider the instant pleadings de novo, and rule that plaintiffs have standing.

### D. ATTORNEYS' FEES AND COSTS

27.    Plaintiffs are entitled to an award of attorney's fees and costs under 28 U.S.C. § 1988.

### E. PRAYER

28.    For these reasons, plaintiffs ask that the Court do the following:

     a.    Rule that plaintiffs have standing and dismiss Defendants' Motion to Dismiss for Lack of Jurisdiction with prejudice;

     b.    Enter a preliminary injunction against defendants that they may not remove, obscure, alter, or destroy the Confederate-American Monuments and their dissenting political viewpoint;

     c.    Order specific performance against defendants that defendants must remove the plastic wrap from the

Littlefield Statues' plinths and be enjoined from obscuring

the Statues' plinths' inscriptions in any way;

d.    Award plaintiffs reasonable attorney's fees; and,

e.    Grant any other relief the Court deems appropriate.

Respectfully submitted on this 4th of December 2017.

/s/ KIRK DAVID LYONS
Texas Bar No. 12743500
P.O. Box 1235
Black Mountain, N.C. 28711
Tel. (828) 669-5189
Fax (828) 575-5290
kdl@slrc-csa.org

## CERTIFICATE OF SERVICE

I certify that on December 4, 2017, a copy of Plaintiffs' Reply Brief on Motions for Declaratory Judgment and Preliminary Injunction was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for defendant, Gregory Fenves.

H. Carl Myers
Office of the Attorney General
P.O. Box 12548
Austin, TX 78711
Tel. (512) 475-4103
FAX (512) 320-0667
carl.myers@oag.texas.gov