IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DAVID MCMAHON, STEVEN  §
LITTLEFIELD, AND THE TEXAS  §
DIVISION, SONS OF CONFEDERATE  §
VETERANS, INC.,  §
    PLAINTIFFS,  §
V.  §
                § CAUSE NO. 1:17-CV-822-LY
GREGORY L. FENVES, IN HIS  §
OFFICIAL CAPACITY AS PRESIDENT  §
OF THE UNIVERSITY OF TEXAS AT  §
AUSTIN,  §
    DEFENDANT.  §

## **MEMORANDUM OPINION AND ORDER**

Before the court are Defendant's Motion to Dismiss filed November 20, 2017 (Dkt. No. 12), Plaintiffs' Response to Defendant's Motion to Dismiss filed December 4, 2017 (Dkt. No. 13), and Defendant's Reply in Support of Motion to Dismiss filed December 11, 2017 (Dkt. No. 14). Having carefully considered the briefing, applicable law, and the entire case file, the court will grant the motion to dismiss for the reasons that follow.

### I. BACKGROUND

George Littlefield was an early and prominent benefactor to the University of Texas ("the University"). He served in Terry's Texas Rangers during the Civil War and believed that Confederate history should be preserved and celebrated so that "future generations would remember those grand patriots who gave up their lives for the cause of liberty and self-government." To that end, he commissioned a sculptor to create statues of Jefferson Davis, Robert E. Lee, Albert Sidney Johnston, John Reagan, James Hogg, and President Woodrow Wilson "during a period of resurgent white Southern nostalgia for the social order of the old

South embodied by the Confederacy."[1] Littlefield's will provided a bequest to the University to establish the Littlefield Fund for Southern History and another fund to erect the commissioned statues "in places of prominence" on campus. The statues were installed along the main mall of the University's Austin, Texas campus in the 1930s.

In 2015, University President Gregory L. Fenves ("Fenves") formed a taskforce with students, faculty, and alumni "to study the artistic, social, political intent, and historical context" of the statues, to "review the past and present controversies over the statues," and to "develop[] alternatives for the for the relocation of the statues." The taskforce suggested several solutions, including relocating the statues to the Briscoe Center for American History to be displayed in full historical context with one of the largest collections of resources on American slavery in the country as well as in full artistic context alongside the papers of Littlefield and the sculptor of the statues. After a white supremacist shot and killed nine individuals at a church in Charleston, South Carolina, Fenves accepted the recommendation of the task force and announced his decision to move the Jefferson Davis and Woodrow Wilson statues. David Bray and Texas Division of the Sons of Confederate Veterans filed suit in state court the next day seeking a permanent injunction to prevent Fenves from removing the statues. The suit was based on state-law claims similar to those brought by the current plaintiffs. The state court denied the motion for an injunction on the basis that the plaintiffs did not have standing to bring the claims. The Texas Sixth Court of Appeals affirmed. *See Bray v. Fenves*, No. 06-15-75-CV, 2016 WL 3083539 (Tex. App.—Texarkana 2016, pet. denied). The Wilson and Davis statues were subsequently removed, but the other Confederate statues remained on the mall.

---

[1] *Task Force on Historical Representation of Statuary at UT Austin*, Report to President Gregory L. Fenves (Aug. 10, 2015), http://diversity.utexas.edu/statues/wp-content/uploads/2016/01/Task-Force-Report-FINAL-08_09_15.pdf.

2

In 2017, Fenves caused the removal of the Robert E. Lee, Albert Sidney Johnston, John Reagan, and James Hogg statues from the main mall, after a neo-Nazi killed a young woman who was counter-protesting a white-supremacist demonstration in Charlottesville, Virginia. Fenves determined that "Confederate monuments have become symbols of modern white supremacy and neo-Nazism."[2]

Plaintiffs David McMahon, Steven Littlefield, and Texas Division, Sons of Confederate Veterans, Inc.[3] filed this suit against Fenves on August 23, 2017. McMahon filed his First Amended Complaint, Application for Injunctive Relief, & Motion for Declaratory Judgment on September 20, 2017 (Dkt. No. 7).[4] The parties agreed that the University would maintain the *status quo* until the court ruled on the motion to dismiss.

McMahon and Littlefield are both descendants of Confederate veterans, and Littlefield is a descendant of George Littlefield. McMahon claims that the University's removal of the statues and impending obscuration of the plinths of the statues violates his right to free speech under the First Amendment. In "abridging the political speech of the monument," McMahon claims that the University abridged his own right to hold a dissenting political viewpoint.

The Texas Division, Sons of Confederate Veterans (the "Sons") seek to "protect the memory of our beloved Confederate Veterans," including "memorials, images, symbols, monuments and gravesites." The Sons also claim a First Amendment injury on behalf of its

---

[2] Gregory L. Fenves, *Confederate Statues on Campus*, (Aug. 20, 2017), https://president.utexas.edu/messages/confederate-statues-on-campus.

[3] As the interests of Plaintiffs do not diverge, the court will refer to them collectively as "McMahon," unless otherwise noted or as needed for context.

[4] McMahon filed an unopposed motion to withdraw his motion for preliminary injunction on September 27, 2017 (Dkt. No. 10), which this court granted on October 2, 2017 (Dkt. No. 11).

3

members because its members "dissenting political viewpoint [] was communicated by the Littlefield statues."

Invoking the supplemental jurisdiction of this court, McMahon brings several additional state-law claims, including breach of the bequest agreement between Littlefield and the University, violation of Texas Government Code Section 2166.501 and .5011, and violation of the Board of Regents' authority over the University campus. Fenves moved to dismiss for lack of standing and for failure to state a claim.

## II.  STANDING

The judicial power may be invoked to adjudicate a disagreement between litigants only if the party bringing suit has standing to bring its claims. Article III of the Constitution limits the exercise of the judicial power to the "resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Standing to bring suit is an "essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong," *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016), in order to ensure that the judicial power is invoked only to "redress or prevent actual or imminently threatened injury" particular to the plaintiff. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

The elements of standing are familiar: a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan*, 504 U.S. at 560–61. The plaintiff bears the burden of establishing each of these elements "with the manner and degree of evidence

4

required at the successive stages of the litigation." *Id.* at 561. At the motion-to-dismiss stage "the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (internal punctuation and citation omitted). The court may not "create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).

To demonstrate an injury in fact, a plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). A particularized injury "must affect the plaintiff in a personal and individual way." *Id.* Unlike when one is challenging the legality of an action taken directly against the plaintiff, when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed." *Lujan*, 504 U.S. at 562.

### 1. Legally Protected Interest

To satisfy the injury-in-fact prong, a plaintiff must allege an invasion of a "legally protected interest," that is both "concrete and particularized." The legally protected interest McMahon seeks to protect is the right to hold a politically unpopular viewpoint. Put simply, McMahon argues that the University engaged in viewpoint discrimination against his dissenting viewpoint—that which celebrates the Confederate legacy—when the University removed the Confederate statues from its grounds. Because McMahon shares this dissenting viewpoint, he believes that the University's removal of the statues amounts to viewpoint discrimination against him personally. When standing is contested, the appropriate inquiry is whether the interest is cognizable in the abstract, and then, whether such interest is concrete and particularly felt by those bringing suit; if the interest alleged is both cognizable and particularly felt it is an injury in

5

fact. *See Lujan*, 504 U.S. at 563 ("[T]he injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.").

An intangible interest, such as that of free speech, satisfies the concreteness requirement. *See Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)). Concreteness, however, is not enough—the interest must also be particularized.

## 2. Particularized Interest

Construed charitably, McMahon's clearest claim of a particularized injury seems to be that the University discriminated against his dissenting political viewpoint when it removed the statues simply because the statues represented his political viewpoint. Although the University has not taken a direct action against McMahon or prevented McMahon from speaking, McMahon argues that his "injury is distinct from any effect on the general public" because of the McMahon's "unique ties through familial veterans' service to the dissenting political viewpoint expressed in the [s]tatues."[5]

Subjective ideological interests—no matter how deeply felt—are not enough to confer standing. *See Sierra Club v. Morton*, 405 U.S. 727, 729–35 (1972).[6] Our system of governance

---

[5] McMahon argues that "[i]n order for an injury to be particularized, it must effect [sic] a small, easily identifiable group, as distinguished from the public generally." McMahon relies on decisions holding that beneficiaries of a charitable trust have standing to enforce the terms of that trust and bases his analysis on these cases. However, neither McMahon, Littlefield, nor the Sons are beneficiaries, trustees, or executors of the George Littlefield will. And no matter how "sharply defined" or "small" the membership, the Sons may not police the terms of the will.

[6] In *Sierra Club*, the Sierra Club sought to enjoin the government from developing a national park. *Id.* at 729–31. It claimed a special interest in the "conservation and sound maintenance of the national parks." *Id.* at 730. The Sierra Club claimed it was injured by "a change in the aesthetics and ecology" of particular national parks. *Id.* at 734. The Court did not question that this type of harm "may amount to an 'injury in fact,'" but noted "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 734–35.

6

assigns the vindication of value preferences to the democratic political process, not the judicial process, *see Lujan*, 504 U.S. at 576, because limiting the right to sue to those most immediately affected "who have a direct stake in the outcome" prevents judicial review "at the behest of organizations who seek to do no more than vindicate their own value preferences." *Sierra Club*, 405 U.S. at 740. McMahon and Littlefield seek to do just that. McMahon and Littlefield may be more deeply attached to the values embodied by the Confederate monuments than the average student rushing to class on the mall, but their identities as descendants of Confederate veterans do not transform an abstract ideological interest in preserving the Confederate legacy into a particularized injury. The alleged free-speech injury of McMahon and Littlefield, while perhaps cognizable in the abstract, is not an *injury in fact*.

McMahon also relies on several cases for the proposition that alleging a First Amendment violation is all that is needed to confer standing. McMahon's reliance on these cases is misplaced. The Court did not express an opinion on the parties' standing to sue—only on the merits of their First Amendment claims. In fact, none of the cases cited by McMahon discussed standing. Nonetheless, these cases illustrate the same principles as *Sierra Club* and *Lujan*: an injury to a cognizable First Amendment interest must be concrete and particularly felt by the plaintiff bringing suit. In each of the cases relied on by McMahon, the interest was the right to free speech; however, that interest was still particular to each of the plaintiffs bringing suit because the government acted directly against the plaintiffs, *inter alia*, in denying a license, denying a grant or funding, and denying the opportunity to erect a new statue.

In *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, the same organization bringing suit today unsuccessfully sought state approval for a specialty license plate featuring the Confederate Flag. ___ U.S. ___, 135 S. Ct. 2239 (2015). In *Summum*, a religious organization

7

brought suit for a violation of the First Amendment after it was twice denied a request to erect a stone monument in a park with other permanent displays. 555 U.S. 460, 464 (2009). Likewise, in *National Endowment for the Arts v. Finley*, artists sued on a theory of viewpoint discrimination when they were denied grant funding by the National Endowment for the Arts. 524 U.S. 569, 577 (1998). Finally, in *Rosenberger v. Rector & Visitors of Univ. of Virginia*, a religious student organization was denied funding by a state university to publish a religious magazine. 515 U.S. 819, 827 (1995). These cases bear out what the court concluded in *Lujan*: when "the plaintiff himself is an object of the [government's] action . . . there is ordinarily little question that the action or inaction has caused him injury." 504 U.S. at 561–62.

McMahon does not "clearly allege" with specificity how the display or non-display of a statue, representing a viewpoint with which he agrees, equates to an exercise of his First Amendment rights. McMahon did not fund the original statues; nor was he denied permission to erect new statues. *Cf. Summum*, 555 U.S. at 464. In fact, McMahon does not allege that he was prevented from speaking at all. Far from bolstering his argument, these cases illustrate the fundamental defect in this case—a general action taken by the University to remove an inanimate object, which bears no relation to McMahon other than a shared ideological interest, is not an action taken against McMahon.[7] McMahon and Littlefield have not alleged a sufficient injury in fact, and as such, lack standing to bring this lawsuit.

---

[7] This much is revealed by the pleadings themselves, in which McMahon alleges that the removal of the Confederate monuments and obscured inscriptions "directly abridges the political speech *of the monuments*," which he claims irreparably injures McMahon.

8

### 3. Associational Standing

An association seeking to "bring suit on behalf of its members" has standing only if "its members would otherwise have standing to sue in their own right." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Sons seeks to "protect the memory of our beloved Confederate Veterans," including "memorials, images, symbols, monuments and gravesites." According to the Sons, these memorials communicate "the political viewpoint that Confederate American Heroes sacrificed for a noble cause that the victors in the war have almost uniformly whitewashed from history." It argues that "[the Sons] and [the Sons'] members were uniquely injured" because their "dissenting political viewpoint [] was communicated by the Littlefield statues." Though the Sons argues the injury is unique to its members, it is the same injury alleged by McMahon and Littlefield and is not sufficient to confer standing. Because the Sons pleads no injury to its members other than an injury rejected by this court, it has not pleaded that "its members would otherwise have standing to sue in their own right." Accordingly, the Sons lacks standing to bring this lawsuit.

### III. STATE-LAW CLAIMS AND SUPPLEMENTAL JURISDICTION

In addition to the federal-law claim, McMahon asserts three state-law causes of action, including breach of the George Littlefield bequest, breach of Texas Monument Protection Act, and breach of the Board of Regents authority by the University. McMahon invokes the supplemental jurisdiction of this court to adjudicate his state-law claims.

A court may decline to exercise supplemental jurisdiction over state-law claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3); *see also Artis v. District of Columbia*, ___ U.S. ___, 138 S. Ct. 594, 597–98 (Jan. 22, 2018) ("When

9

district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."); *accord Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 872–73 (5th Cir. 2016). The Sixth Court of Appeals considered and rejected similar state-law claims brought by some of these Plaintiffs. *See Bray v. Fenves*, No. 6-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied). Since the only federal-law claim has been dismissed, this court will not exercise its supplemental jurisdiction over the remaining state-law claims.

## IV. CONCLUSION

The court concludes that McMahon, Littlefield, and the Texas Division, Sons of Confederate Veterans lack standing to bring this suit. Defendant additionally moves to dismiss this suit on the grounds that the Sons' Complaint fails to state a claim upon which relief can be granted. The court takes no position on whether the Sons' alleged injury finds support in First Amendment case law or would ultimately be successful on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (refusing to decide merits before resolving Article III jurisdictional questions "because it carries the courts beyond the bounds of authorized judicial action"). Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss filed November 20, 2017 (Dkt. No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice.

SIGNED this **25th** day of June, 2018.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE